WILLIAMS v. TAYLOR et al., Adm'rs.

No. 29607.   Oct. 21, 1941.

Rehearing Denied Dec. 16, 1941.

Application for Leave to File Second Petition for Rehearing Denied Feb. 17, 1942.

*121 P. 2d 1004.*

Henry R. Duncan, of Tulsa, for plaintiff in error.

Hess Crossland, of Tulsa, for defendants in error.

RILEY, J. This is an action commenced by plaintiff in error in the district court of Tulsa county to establish a claim against the estate of Charles Mashunkashey, deceased, who was a full-blood Osage Indian. Defendants William M. Taylor and C. S. Walker are the administrators of the estate of Charles Mashunkashey. Plaintiff presented her claim to the administrators, wherein she claimed payment for care, treatment, nursing, board, and rent furnished deceased in his lifetime, as follows:

| | |
|---|---|
| October 1, 1931, to January 10, 1932, board, room, laundry, nursing and care, | $500.00 |
| January 10, 1932 to June 10, 1934, except 60 days in 1932, less $25 cash, for board, room, laundry, nursing and care | 5,375.00 |
| November 1, 1931, cash advanced for payment of fine, | 30.00 |
| September 1934, grocery account, | 32.50 |
| | $5,937.50 |

This claim was disallowed by the administrators, and this action was commenced.

Charles Mashunkashey did not have a certificate of competency. Dr. Fred S. Clinton had been appointed guardian of the estate of Charles Mashunkashey. Plaintiff alleged:

"That the deceased was a member of the Osage Tribe of Indians and possessed an estate worth about $175,000, and the care, treatment, nursing, board and rent, furnished by the plaintiff to the deceased, were necessary to his comfort, health and well-being, and were furnished after the guardian for said deceased had failed to make adequate provision for said deceased during his lifetime. . . . That it was necessary, in order that deceased might have the necessities and comforts of life, that the plaintiff furnish the items listed in her said claim."

Defendants in their answer denied that the guardian failed, neglected, or refused to furnish his ward suitable and necessary maintenance and support, and specifically denied that the alleged services and supplies claimed for were furnished and supplied by plaintiff after refusal or neglect of the guardian to supply same, and further alleged:

". . . These defendants allege and state that at all times mentioned in plaintiff's petition the said Charles Mashunkashey was a full-blood Osage Indian, not having a certificate of competency, and that the alleged indebtedness set forth in plaintiff's petition was never authorized or the furnishing of

the services and supplies was never approved by the Secretary of Interior as required by law."

At the close of plaintiff's evidence, defendants' demurrer was sustained, and plaintiff appeals.

Defendants in error present a motion to dismiss the appeal upon the ground that the district court was without jurisdiction in that the claim should have been presented to the county court in the guardianship proceedings.

Defendants cite and rely upon Capps, Gdn., et al. v. Kelley, 177 Okla. 98, 57 P. 2d 824, and Crossley et al. v. Cox, Gdn., 179 Okla. 52, 64 P. 2d 663. Those cases hold that the county court having jurisdiction of the estate of a person adjudged to have been incompetent is vested with exclusive jurisdiction to pass upon the claim of third persons for alleged necessaries asserted to have been furnished to an incompetent person while under guardianship at the request of the incompetent person when the guardian failed or refused to make provisions for such necessities. But in those cases it appears that the wards were still living and the guardian was still in full charge of the estates under the supervision of the county court. In this case the incompetent had died before plaintiff had presented the claim. The guardianship had terminated, except as to settlement of the guardian's account.

Administrators had been appointed and they were entitled to the possession and control of the property belonging to the estate of the deceased incompetent for the purpose of paying claims against the estate as well as for distribution to the heirs.

In O'Mealey, Adm'r, v. Grum, 186 Okla. 697, 100 P. 2d 265, we held:

"Upon the death of a ward the rights and duties of a guardian cease, except the duty to make a final settlement of his guardianship accounts, and a claim for compensation for services rendered the ward prior to his death, by agreement with the guardian, may properly be filed with the administrator of his estate, where the value of the services had not been agreed upon, and no claim therefor filed with the guardian, prior to the death of the ward."

Defendants contend that the rule there stated is not in harmony with the provisions of our Constitution, statutes, and previous decisions.

We do not intimate that it would have been improper for plaintiff to have presented her claims, at any time before the death of the ward, to the guardian or to the county court. Before the death of the ward, that was the only court open to claimant, but when the ward died and administrators were appointed, the responsibility for the payment of all outstanding claims passed to the administrators under the supervision of the county court.

As stated in the O'Mealey Case, supra, after the death of his ward, the guardian was not authorized to agree on an amount due the plaintiff or bind the estate for its payment.

Had the claim been presented direct to the county court in the guardianship proceedings, after the death of the ward, the county court would not have been authorized to approve and allow the claim and bind the estate for its payment, since all claims against the estate of a deceased person must be allowed and approved by the administrator as well as the county court. We adhere to the rule stated in O'Mealey, Adm'r, v. Grum, supra.

Plaintiff contends that the court erred in sustaining the demurrer to plaintiff's evidence.

It is asserted that since plaintiff's claim is for compensation for necessaries furnished deceased after the guardian had failed to make adequate provisions for deceased during his lifetime, and the uncontradicted evidence is that plaintiff furnished such necessities, it was error to sustain the demurrer to the evidence.

As to certain parts of plaintiff's claim, her proof was amply sufficient, except for the fact that Charles Mashunkashey

was an Osage Indian of more than half blood and did not have a certificate of competency.

The uncontradicted evidence is that about October, 1931, Charles Mashunkashey was married to the daughter of plaintiff. Dr. Clinton was his guardian. Charles Mashunkashey had been living in a small garage apartment, insufficient for a man and wife. He owned some property in Tulsa, but was apparently unable to get possession of his house.

Plaintiff rented him her home furnished for about 41 months. She makes a charge of $55 per month therefor, which is not shown to be unreasonable. Both Charles and his wife went to the guardian in an attempt to get a home in which to live. The guardian refused. On one occasion plaintiff talked to the guardian about the matter. His reply was an emphatic "No." Mashunkashey owned property and other assets to the value of approximately $160,000, but because of his incompetency and guardianship and other complications, he was unable to get a suitable home, after his marriage, in which to live.

As to some of the other things claimed for, the evidence is not so clear, yet it was proved that plaintiff did render services in the way of nursing and care at times when Mashunkashey was sick; she also did laundry work and rendered other services. The evidence of plaintiff was sufficient as against the demurrer unless, by the provision of section 6 of the Act of Congress of February 27, 1925, 43 Stat. L. 1008, plaintiff is precluded from recovery. The provision is:

"No contract for debt hereafter made with a member of the Osage Tribe of Indians not having a certificate of competency, shall have any validity, unless approved by the Secretary of the Interior."

In Pasley v. Union National Bank of Bartlesville, 137 Okla. 171, 278 P. 621; Osage County Motor Co. v. Pappin, 139 Okla. 23, 281 P. 217, and in Dial v. Kirkpatrick, 168 Okla. 21, 31 P. 2d 591, we had before us for consideration this Act of Congress. In all three cases we held the act plain, unambiguous, and valid. In none of those cases was the question of the validity of agreements to furnish necessaries involved. But the act makes no exception so as to exclude from its operation agreements of the kind here involved. In Osage County Motor Co. v. United States, 33 Fed. 2d 21, the same act of Congress was construed. That case does not involve indebtedness for necessaries. It was there contended that the act is void because it prevents an Indian of the class indicated from becoming indebted for the bare necessities of life. The Circuit Court of Appeals said:

"It may be, as appellant contends, that the act prevents an Indian of the class indicated from becoming indebted for the bare necessities of life, or contracting for help on his farm, but such a situation is not presented by this record, and, if it were, it would not be material. Such arguments are for Congress and not the courts."

The issue presented here was not before that court, but the language used indicates the view of that court.

In all the cases heretofore cited, it was conceded that the act is within the plenary powers of Congress affecting Indian wards of the government. There being no exception whereby debts for necessities are excluded from its provision, the act must apply to all classes of debts.

It is conceded that the agreements were never presented to or approved by the Secretary of the Interior.

As measured by the act of Congress, the agreements are without any validity.

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, BAYLESS, GIBSON, DAVISON, and ARNOLD, JJ., concur. HURST, J., absent.